**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS W. KARAS, as Trustee of the Marie T. Karas Irrevocable Insurance Trust dated September 2, 2008, | ) ) ) ) | |
| Plaintiff, | ) ) | 25 C 12678 |
| v. | ) ) | |
| THE PENN MUTUAL LIFE INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**CHARLES P. KOCORAS, District Judge:**

Plaintiff Nicholas W. Karas, as Trustee of the Marie T. Karas Irrevocable Insurance Trust dated September 2, 2008, brought suit against Defendant Penn Mutual Life Insurance Company ("Penn Mutual") alleging the wrongful denial of life insurance benefits. Plaintiff asserts claims for promissory estoppel and fraud. Before the Court is Penn Mutual's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Penn Mutual's motion is granted.

**BACKGROUND**

In September 2008, Penn Mutual issued a life insurance policy (Policy No. 8217304) (the "Policy")[1] to Plaintiff which had a $2 million death benefit. Plaintiff was

---

[1] Penn Mutual attached to its motion to dismiss what it asserts is a true and correct copy of the Policy. *See* Dkt. # 19-1. Plaintiff takes issue with this Policy because the "date of issue" of page

the owner of the Policy, and the Policy insured the life of now-deceased Marie Karas. The Policy was a "Flexible Premium Adjustable Universal Life Insurance Policy," which, according to Penn Mutual, "meant that premiums were flexible and could be paid 'in any amount and at any interval . . . as long as the Net Cash Surrender Value [was] sufficient to keep it in force, or if the No-Lapse Guarantee Account less any outstanding indebtedness exceed[ed] zero as described in the No-Lapse Guarantee Requirement provision." Dkt. # 19, at 6–7 (citing Dkt. # 19-1, at 7, 9).

On January 17, 2024, Plaintiff contacted Penn Mutual "to obtain information regarding the status of the Policy, to ensure the Policy was in force and to understand the process to obtain the death benefit, should Marie pass away." Dkt. # 1-1, ¶ 27. During the conversation, Penn Mutual's representative told Plaintiff that "the Policy was in full force and effect" and that "the Policy had a no-lapse guarant[ee]." *Id.* ¶ 28. This gave Plaintiff assurance that the Policy would not lapse. Plaintiff was never told

---

three is December 18, 2025. Penn Mutual has explained that December 18, 2025, was the date the Policy was printed and certified as a duplicate copy. Despite Penn Mutual's explanation of the print date and the fact that the "Policy Date" is listed as September 15, 2008 (which is consistent with exhibits attached to the complaint, *see* Dkt. # 1-1, at 23), Plaintiff argues the complaint should not be dismissed based upon a document which appears to have been generated later in time and is not the actual or complete Policy. "At a minimum," Plaintiff says, "there are questions of fact as to whether the Policy is before the Court and whether the language which forms the basis for Defendant's argument is from the policy at issue." Dkt. # 30, at 5. However, Plaintiff has not identified anything that he believes is missing from Penn Mutual's copy of the Policy, nor has he pointed to any inconsistences or contradictions between the relevant Policy provisions quoted by Penn Mutual in its motion and provisions of the Policy that Plaintiff received in 2008. The Court is satisfied that the relevant provisions in Penn Mutual's copy of the Policy are accurate and may be referred to in adjudicating Penn Mutual's motion to dismiss. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (court may consider "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice.").

that the Policy would or could lapse at any time in 2024, or that the no-lapse policy requirement had not been met. Plaintiff came away from the conversation with the understanding that the Policy was in effect and enforceable and that the Trust was protected from the Policy failing by the no-lapse guarantee. At the time of the call, the premium for the annual Policy had not been paid since December 2021. Plaintiff "would have paid any premium due in order to maintain the Policy, particularly given Marie's age and poor health in January 2024 and the substantial premiums which had been paid prior thereto." *Id.* ¶ 43.

After Marie passed away in September 2024, the Trust submitted a claim to Penn Mutual to pay the Policy's death benefit. Penn Mutual denied the claim because the Policy lapsed in May 2024.

On page three of the Policy, it is written that "The No Lapse Guarantee does not mean the policy would never lapse. (See section 4 of the policy.)." Dkt. # 19-1, at 4. Immediately after that, it states, "NOTE: Insurance will terminate if the premiums paid and the interest credited are insufficient to cover the monthly deductions, except as provided in Section 4." *Id.* The No-Lapse Guarantee provision in Section 4 provides that "[t]his policy will not lapse as a result of a Net Cash Surrender Value insufficient to cover the Monthly Deduction for the following month if, on a monthly anniversary prior to the Maturity Date . . . the No-Lapse Guarantee requirement is satisfied." *Id.* at 8. The No-Lapse Guarantee Requirement "is satisfied if, on a monthly anniversary prior to the Maturity Date . . . the No-Lapse Guarantee Account less any outstanding

3

indebtedness exceeds zero;" however, the Requirement is *not* satisfied "if the indebtedness is greater than the Cash Surrender Value. *Id.*

The Policy contains a "Continuation of Insurance Provision" which provides that:

> If premium payments cease or if insufficient premiums are paid, the insurance provided under this policy, including benefits provided by any supplemental agreements attached to this policy, will continue, subject to the Grace Period provision, in accordance with the provisions of this policy and any such supplemental agreements for as long as the Net Cash Surrender Value is sufficient to keep it in force, or if the No-Lapse Guarantee Account less any outstanding indebtedness exceeds zero as described in the No- Lapse Guarantee Requirement provision above.

*Id.* at 9.

There is also a "Grace Period" provision, which provides that if "on a Monthly Anniversary prior to the Maturity Date . . . the Net Cash Surrender Value is insufficient to cover the Monthly Deduction for the following policy month[] and the No-Lapse Guarantee Requirement is not met," the insured is given a 61-day grace period to pay the amount of premium needed to keep the Policy in force. *Id.* If the necessary premium is not paid during the grace period, the Policy will lapse at the end of the grace period.

As a result of the denial of benefits, Plaintiff filed this lawsuit asserting claims for promissory estoppel (Count I) and common law fraud (Count II). Penn Mutual moves to dismiss both claims.

4

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, if accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "must accept as true all of the allegations contained in a complaint" that are not legal conclusions. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Claims of fraud are "analyzed under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a pleading to state with particularity the circumstances constituting fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (7th Cir. 2014) (citation modified). This "ordinarily requires describing the who, what, when, where, and how of the fraud." *Id*. at 737 (internal quotations omitted).

## DISCUSSION

The parties agree that Plaintiff's promissory estoppel and fraud claims are governed by Illinois law. The Court addresses each claim in turn.

### I.    Promissory Estoppel

To survive Penn Mutual's motion to dismiss, Plaintiff must plausibly allege that (1) Penn Mutual made "an unambiguous promise," (2) Plaintiff "relied on such promise," (3) Plaintiff's "reliance was expected and foreseeable" by Penn Mutual, and (4) Plaintiff "relied on the promise to its detriment." *Newton Tractor Sales, Inc. v.*

*Kubota Tractor Corp.*, 233 Ill. 2d 46, 51 (2009) (citation omitted). This reliance element "can alternatively be described as demonstrating plaintiff's justifiable or reasonable reliance on the promise, similar[ ] to the elements required in a claim for fraud." *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 91; *see also Quake Constr., Inc. v. Am. Airlines, Inc.*, 141 Ill. 2d 281, 310 (1990). ("Plaintiff's reliance must be reasonable and justifiable.").

Penn Mutual attacks the first and third elements of Plaintiff's promissory estoppel claim, arguing that (1) Penn Mutual never made an "unambiguous promise" on the January 2024 phone call and (2) even if it did, Plaintiff's reliance on any such promise was unreasonable because that promise would have "directly contradicted the Policy terms and the irrefutable notion that premium must be paid to continue coverage." Dkt. # 19, at 10. The Court agrees with Penn Mutual that Plaintiff's promissory estoppel claim fails right out of the gate.

For purposes of a promissory estoppel claim, a promise need not be express, but it must be unambiguous. *See Bank Comp. Network Corp. v. Cont'l Ill. Nat'l Bank & Tr. Co.*, 110 Ill. App. 3d 492, 590–91 (1982) ("[T]he promise essential to a claim of promissory estoppel need not be express, only unambiguous."). "For there to be common understanding of the unambiguous promise among the parties, the intention of the parties must be communicated in some way through acts or conduct." *Chehade v. Foley & Lardner, LLP*, 2024 WL 4953824, at *2 (N.D. Ill. 2024).

6

The only affirmative statements Plaintiff alleges in the complaint are that the Policy (1) was in full force and effect and (2) had a no-lapse guarantee provision. These statements cannot be construed as promises in the way that Plaintiff advocates. A promise is the "manifestation of an intention to act or refrain from acting in a specified manner, conveyed in such a way that another is justified in understanding that a commitment has been made; a person's assurance that the person will or will not do something." *Promise*, Black's Law Dictionary (12th ed. 2024). "[I]n other words, they are statements about what one will do in the future." *Vertex Ref., NV, LLC v. Nat'l Union Fire Ins., Co. of Pittsburgh, PA*, 2017 WL 2973482, at *7 (N.D. Ill. 2017) (citing *Promise*, Merriam-Webster Collegiate Dictionary (11th ed. 2003)).

Here, Penn Mutual allegedly confirmed the current status of the Policy and the existence of the no-lapse guarantee provision at the time of the January 2024 phone call. Plaintiff argues that such verification of coverage amounted to a promise that the Policy would not lapse in 2024. But Plaintiff reads too much into these two alleged statements. Penn Mutual's alleged statements say nothing about what will or will not happen in the future. The key question is whether Penn Mutual, by merely confirming the coverage status during the call, effectively made an unambiguous promise that the Policy would remain active and would never lapse—or, at least, was in no danger of lapsing at any time in 2024. The answer is that it did not. Furthermore, Penn Mutual's alleged failure to dispel Plaintiff's subjective belief that the Policy would never lapse does not establish an unambiguous promise. *See, e.g., Centro Medico Panamericano, Ltd. v. Laborers'*

7

*Welfare Fund of Health & Welfare Dep't of the Const. & Gen. Laborers' Dist. Council*, 2015 IL App (1st) 141690, ¶¶ 14–15 (surgical center's assumption that its own charges were usual and customary, and fact that insurer did not dispel that assumption, could not establish unambiguous promise). Simply put, Penn Mutual did not promise indefinite coverage, nor did Penn Mutual promise that the Policy would not lapse in the future.

Even if the Court were to assume an unambiguous promise was made, Plaintiff has failed to sufficiently allege reasonable and justifiable reliance. "A plaintiff's reliance must be both reasonable and justifiable." *Centro Medico Panamericano, Ltd. v. Benefits Mgmt. Grp., Inc.*, 2016 IL App (1st) 151081, ¶ 34 (citing *Chatham Surgicore, Ltd. v. Health Care Serv. Corp.*, 356 Ill. App. 3d 795, 800 (2005)). "In determining whether a party's reliance was reasonable, the court must consider all of the facts that the party knew, as well as those facts that the party could have discovered through the exercise of ordinary prudence." *Tirapelli v. Advanced Equities, Inc.*, 351 Ill. App. 3d 450, 456 (2004). Although normally a question of fact, a court can determine whether reliance was reasonable as a matter of law "when no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn." *Id.* (internal quotations and citation omitted).

To the extent Plaintiff interpreted Penn Mutual's statement that the Policy had a no-lapse guarantee as a promise that the Policy would never lapse (or, at least, would not lapse in 2024), such an interpretation is simply unreasonable. Plaintiff, who is

charged with knowing the contents of the Policy[2], knew that certain terms and conditions needed to be met in order for the no-lapse guarantee to apply. Page three of the Policy explicitly states that "The No Lapse Guarantee does not mean the policy would never lapse." Dkt. # 19-1, at 4. Reliance on a promise that directly contradicts the Policy is neither reasonable nor justifiable. It is the terms of the Policy, not Plaintiff's subjective expectations and beliefs, that determine the parties' respective rights and obligations. *See*, *e.g.*, *St. Joseph Data Serv., Inc. v. Thomas Jefferson Life Ins. Co.*, 73 Ill. App. 3d 935, 942 (1979) (in a promissory estoppel cause of action, allegations of reliance that are inconsistent with a written contract can be disregarded).

Furthermore, dismissal of Count I is independently warranted because "[a]pplication of promissory estoppel is proper only in the absence of an express agreement." *Matthews v. Chi. Trans. Auth.*, 2016 IL 117638, ¶ 92 (citations omitted). "This rule applies because promissory estoppel is intended as a means to enforce gratuitous promises and is not designed to provide a party to a negotiated bargain a 'second bite at the apple' if it fails to prove breach of contract." *Id.* "Once it is

---

[2] It is well-established that under Illinois law that insureds "bear the burden of knowing the contents of their insurance policies," and that "[e]ven if they do not read the policy, they are deemed to know the information the policy contains." *Babiarz v. Stearns*, 2016 IL App (1st) 150988, ¶ 43 ("We do not excuse the burden of knowing the contents of an insurance policy where there are no allegations that it was ambiguous."); *see also Garrick v. Mesirow Fin. Holdings, Inc.*, 2013 IL App (1st) 122228, ¶ 49 ("Illinois law places a burden on the insured to know its needs for coverage and the contents of its insurance policies."). In other words, the "insured cannot blame the insurance company for its failure to read the policy to discover the requirements for bringing suit. It is not the duty of the insurer to inform the insured of his duties." *Foamcraft, Inc. v. First State Ins. Co.*, 238 Ill. App. 3d 791, 793–94 (1992).

established, either by an admission of a party or by a judicial finding, that there is in fact an enforceable contract between the parties and therefore consideration exists, then a party may no longer recover under the theory of promissory estoppel." *First Mercury Ins. Co. v. Ciolino*, 2018 IL App (1st) 171532, ¶ 50 (citation modified) (quoting *Prentice v. UDC Advisory Servs., Inc.*, 271 Ill. App. 3d 505, 512 (1995)). Because there is an express insurance contract between the parties, Plaintiff's claim for promissory estoppel necessarily fails. Count I is dismissed without prejudice.

## II.     Fraud

Establishing actionable fraud under Illinois law requires a showing that Penn Mutual "(i) made a false statement of material fact; (ii) knew or believed the statement to be false; (iii) intended to and, in fact, did induce [Plaintiff] to reasonably rely and act on the statement; and (iv) caused injury to [Plaintiff]." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 766 (7th Cir. 2010) (citing *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 185–86 (1982)). Here, Plaintiff does not and cannot dispute the truth of the two affirmative statements alleged in the complaint: (1) the Policy was in effect at the time of the call, and (2) the Policy contained a no-lapse guarantee provision.[3]

---

[3] Penn Mutual contends that Plaintiff was given "accurate and complete information." Dkt. # 19, at 8 n.3. Plaintiff argues the complaint disputes this characterization and contends that Defendant's statement creates a question of fact with respect to the information provided to Plaintiff. However, while Plaintiff may believe he was not provided with "complete" information, he cannot argue that the information he did allegedly receive was not "accurate."

Plaintiff takes issue with the fact that he was not told a lapse was approaching[4] and was not told that the Policy "would or could lapse at any time in 2024." Dkt. # 30, at 14; *see also* Dkt. # 1-1, ¶¶ 29–30. But by emphasizing his allegations that Penn Mutual failed to inform him that "payment was required to be paid or that the Policy was approaching a lapse," Dkt. # 30, at 4, Plaintiff seemingly attempts to recast allegations of fraud as fraudulent concealment, which has distinct elements, including a duty to disclose, which Plaintiff has not attempted to allege here. *See, e.g.*, *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 737 (7th Cir. 2017). Additionally, any claim based on a promise of future conduct, i.e. that the Policy could never lapse or that Penn Mutual would pay out the Policy without receiving additional payment, would be a claim for promissory fraud, which requires sufficient allegations of a "scheme to defraud." *See Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 853 (7th Cir. 2009).

The fact that the sole case cited in support of Plaintiff's position is from 1869 is telling, and, in any event, his reliance on that case is misplaced. Unlike here, that case involved an alleged promise by an insurer's agent that was based on a mistake, and the court held that the insurer could not avoid liability based on the agent's mistake. *See Com. Ins. Co. v. Spankneble*, 52 Ill. 53, 57 (1869) ("To permit the company, when the omission was by their own agent, to now avoid the payment of the loss for the neglect

---

[4] Penn Mutual points out another flaw in Plaintiff's argument—Plaintiff assumes there was in fact an "impending lapse" at the time of the January 2024 phone call. However, according to the Policy terms, the May 15, 2024 lapse date was preceded by the 61-day grace period, and the Policy did not enter that grace period until March 2024.

of their agent would amount to a fraud."). The simple fact is that the information conveyed over the phone call, as alleged in the complaint, was limited to accurate representations of existing fact. Plaintiff has failed to point to a false statement or justifiable reliance. Count II is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Penn Mutual's Motion to Dismiss [18] is granted and Plaintiff's complaint is dismissed without prejudice. Plaintiff is granted leave to file an amended complaint by 4/28/2026. Failure to file an amended complaint by 4/28/2026 will result in the summary dismissal of this matter without prejudice. A joint status report is due on 5/4/2026.

It is so ordered.

Charles P. Kocoras
United States District Judge

Date: April 8, 2026

12